THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

PIEDMONT ENVIRONMENTAL
COUNCIL, et al.,

    **Plaintiffs,**

v.                                                        Civil Action No. 3:02CV34
                                                            (BROADWATER)

**MAJOR GENERAL CARL A. STROCK,**
Chief Engineer and Commander,
**UNITED STATES ARMY CORPS
OF ENGINEERS, et al.,**

    **Defendants.**

<u>**MEMORANDUM OPINION GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT**</u>

I. Introduction

Plaintiffs Piedmont Environmental Council, Route 9 Opposition Legal Fund, West Virginia Rivers Coalition, Friends of Summit Point, Nancy Wilson, and John Porter ("Plaintiffs"), filed this action in this Court on April 23, 2002 against Major General Carl A. Strock, Chief Engineer and Commander, United States Army Corps of Engineers and Fred Vankirk, Secretary, West Virginia Department of Transportation, ("the Corps", "WVDOT", or collectively "the agencies"), seeking to restrain the construction of a 4.6 mile four-lane highway from Charles Town, West Virginia to the Virginia state line. Pending before the Court are the agencies' motions for summary judgment (**Docket numbers 91 and 93**) and Plaintiffs' motion for summary judgment (**Docket number 87**). For the reasons set forth herein, the Court **GRANTS** the agencies' motions for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

## II. Factual and Procedural Background

This action is the second case involving Plaintiffs' efforts to stop the construction of a new four lane divided highway from Charles Town, West Virginia to the Virginia state line. The first litigation began on December 13, 2001, when Plaintiffs sued the Federal Highway Administration ("FHWA") and WVDOT asserting that FHWA's environmental impact statement ("EIS") was arbitrary and capricious and not in accordance with the law. ("Route 9 I"). By order dated August 2, 2002, this Court granted Defendants' motions for summary judgment, ruling that the EIS was not arbitrary capricious or contrary to law. See Route 9 Opposition Legal Fund v. Mineta, 213 F. Supp. 2d 637 (N.D. W. Va. 2002). The United States Court of Appeals for the Fourth Circuit affirmed this Court's decision. See Route 9 Opposition Legal Fund v. Mineta, No. 02-2007, 2003 WL 22119924, at *1 (4th Cir. Sept. 15, 2003) (unpublished).

This case involves virtually the same Plaintiffs and their continued efforts to stop the construction of a new West Virginia Route 9. The current Route 9 is a winding two lane road which runs from Berkeley Springs, West Virginia to the western portion of Loudoun County, Virginia. Because of the increased amount of residential and commercial growth in the Eastern Panhandle of West Virginia and the surrounding region, in the early 1990s the State of West Virginia, along with local community leaders, determined that the existing Route 9 was no longer meeting the transportation needs of the region's commuters and residents. WVDOT therefore began studying the possibilities of upgrading or replacing the existing Route 9.

After federal funding was secured, FHWA began a review of the environmental impacts of the project in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-70 (2003). As required by the statute, FHWA's NEPA review consisted of preparing an EIS. In

early 1993, the Corps agreed to become a cooperating agency in the FHWA's EIS and participated in the NEPA review process. In October 2000, FHWA issued a Final EIS ("FEIS") for public comment. After comments were received, FHWA selected and approved on January 4, 2001, WVDOT's preferred alternative which was to build a new four-lane divided highway from Charles Town, West Virginia to the Virginia state line. As part of the new highway, a new four-lane bridge over the Shenandoah River would be built, a small perennial stream (Grog Spring Run) would be relocated, and two farm ponds east of the river would be filled.

Not only as a cooperating agency with FHWA, the Corps participated in the EIS process because several of the proposed alternatives would have an impact on navigable waters. As such, on October 2, 2001, WVDOT applied for a permit from the Corps under Section 404 of the Clean Water Act, 33 U.S.C. § 1344 (2003), ("CWA") in relation to the project. The application described the project as constructing a six-span bridge over the Shenandoah River, a causeway for construction of piers, the relocation of 2,458 feet of Grog Spring Run, and the filling of two ponds totaling 0.64 acres of open water and 0.14 acres of wetland fringe. In addition to the review required under the CWA, the Corps also undertook its own analysis as required under NEPA. After completing the environmental analysis required under NEPA, which included receiving public comments and meeting with various Federal, State, and Local Agencies, the Corps issued an Environmental Assessment ("EA")/Finding of No Significant Impact ("FONSI") on October 16, 2002. On October 23, 2003, the Corps issued to WVDOT a permit under the CWA Section 404 for the project. Plaintiffs seek judicial review of the Corps issuance of the permit under Section 404 of CWA and the Corps NEPA review.

The instant complaint was filed on April 23, 2002 and alleges that the Corps violated CWA

because the decision to issue the Section 404 permit was arbitrary, capricious, and not in accordance with law. The complaint also alleges that the Section 404 permit decision is not legally adequate under NEPA and its implementing regulations. The complaint also contained a claim that Defendants violated the Administrative Procedures Act ("APA"). On December 27, 2002, Plaintiffs filed a First Amended Complaint. On March 31, 2004, the Court granted Defendant's motion to dismiss the APA claim finding that the statute did not provide Plaintiffs with a separate cognizable cause of action; rather, the APA was merely a procedural vehicle to bring the CWA and NEPA claims. See Piedmont Environmental Council v. Flowers, 319 F. Supp. 2d 678, 682 (N.D. W. Va. 2004). That same order granted Defendants' motion in limine barring Plaintiffs from relitigating NEPA claims from Route 9 I. Specifically, the Court ruled in Route 9 I that FHWA's FEIS adequately contained a discussion of alternatives and considered the indirect environmental impacts of constructing the road. See id. at 681-82. Thus, that ruling may not be relitigated in this action.

As a result of these rulings, Plaintiffs filed a motion for leave to file a Second Amended Complaint on June 15, 2004, seeking to add new allegations relating the Corps' NEPA review and a more specific CWA claim. On August 19, 2004, the Court denied the motion as to the CWA claim (Count I) and granted the motion as to the NEPA claim (Count II). Thus, the claims that are properly before the Court are the CWA claim from the First Amended Complaint (Count I) and the NEPA claim from the Second Amended Complaint (Count II).

Plaintiffs filed their motion for summary judgment on October 4, 2004 asserting that: (1) the Corps violated NEPA by relying on FHWA's FEIS and did not consider changed circumstances in the two years following the preparation of FHWA's FEIS; (2) the Corps' NEPA review was deficient because it failed to evaluate the entire project; (3) the Corps' EA/FONSI was arbitrary and capricious

or not in accordance with the law; (4) the Corps violated the CWA because if failed to consider the alternative of improving the existing Route 9 in light of the changed circumstances; and (5) the Corps violated the CWA because its public interest evaluation was flawed.

On November 8, 2004, WVDOT filed its combined cross motion for summary judgment and response to Plaintiffs' motion for summary judgment. WVDOT counters that: (1) the Corps complied with NEPA because it properly analyzed reasonable alternatives and was not required to evaluate the entire project; (2) the CWA was not violated because the Corps properly determined the least environmentally damaging practicable alternative and the Corps undertook an appropriate public interest analysis; and (3) Plaintiffs' changed circumstances argument lacks merit.

The Corps also filed its consolidated cross motion for summary judgment and response to Plaintiffs' motion for summary judgment on November 8, 2004. The Corps submits that: (1) Plaintiffs' NEPA claims are partially barred by the Court's order precluding relitigation of the issues in Route 9 I, and even if those claims are not barred, it properly complied with NEPA in relying on FHWA's FEIS; and (2) its review of the project fully complied with all of the elements of CWA.

The parties subsequently filed cross responses and replies to the motions for summary judgment. The Court held an oral argument on the instant motions on January 7, 2005. The Court has considered the pleadings, the applicable law on point, and the argument of counsel at the oral argument; thus, the issues are ripe for decision. The Court issued an order on April 11, 2005, granting the agencies' motions for summary judgment and denying plaintiffs' motion. That order stated that this memorandum opinion would issue separately.

## III. Applicable Law

A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

B.  Review of Agency Action

A court may set aside an agency's decision only if that decision is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When

reviewing an agency's decision to determine if it was arbitrary and capricious, the scope of review is narrow. See Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 287 (4th Cir. 1999). A court's review is limited to whether "the decision was based upon consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971); see also Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989). "[I]f the agency 'fully and ably explain[s] its course of inquiry, its analysis, and its reasoning sufficiently enough for us to discern a rational connection between its decision-making process and its ultimate decision,' we will let its decision stand." Crutchfield v. County of Hanover, Virginia, 325 F.3d 211, 218 (4th Cir. 2003) (quoting Trinity Am. Corp. v. EPA, 150 F.3d 389, 395 (4th Cir. 1998)). An agency's decision is arbitrary and capricious when the agency has "relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Hughes River, 165 F.3d at 287-88 (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut., 463 U.S. 29, 43 (1983)). The principle of deference embodied in the AP is applicable to NEPA claims. See Hughes River, 165 F.3d at 289.

C.  National Environmental Policy Act

NEPA declares a national policy of protecting and promoting environmental quality. See 42 U.S.C. §§ 4321, 4331(a). In implementing this policy, federal agencies are required to follow certain procedures before undertaking projects that will effect the environment, including preparation of an EIS. See Hughes River Watershed Conservancy v. Glickman, 81 F.3d 437, 443 (4th Cir. 1996). However, NEPA does not mandate that agencies reach a particular substantive result. Rather, NEPA

sets forth procedures that agencies must follow. See id. (citing Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989); Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 558 (1978)). "In other words, '[i]f the adverse environmental effects of . . . proposed action[s] are adequately identified and evaluated, [agencies are] not constrained by NEPA from deciding that other values outweigh the environmental costs.'" Hughes River, 81 F.3d at 443 (quoting Robertson, 490 U.S. at 350).

Section 102 of NEPA requires that an EIS consider "alternatives to the proposed action." See 42 U.S.C. § 4332(2)(C)(iii). NEPA regulations further require that an EIS evaluate "all reasonable alternatives" to the action "and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a) (1996).

In evaluating compliance with NEPA, the court's role is to ensure that the agency "made a good faith judgment, after considering all relevant factors, including possible alternatives or mitigative measures." Coalition for Responsible Reg'l Dev. v. Coleman, 555 F.2d 398, 400 (4th Cir. 1977). The role of the reviewing court is not to make the ultimate decision but to ensure that the agency took a hard look at all relevant factors. Id. The content and scope of the discussion of alternatives varies with existing circumstances. Druid Hills Civic Assoc., Inc. v. Federal Highway Administration, 772 F.2d 700, 712-13 (11th Cir. 1985) (citing Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d at 430, 436 (5th Cir. 1981)). Consideration need only be given to reasonable alternatives. Id. at 713. An EIS "is satisfactory if the treatment of alternatives, when judged against a 'rule of reason,' is sufficient to permit a reasoned choice among various alternatives." Id.

D.  Clean Water Act

The Act's "objective . . . is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). "To that end, the Clean Water Act prohibits discharges of pollutants into the waters of the United States, except in compliance with a permit issued by one of the permit regimes established by the Act." Kentuckians for the Commonwealth Inc. v. Rivenburgh, 317 F.3d 425, 447 (4th Cir. 2003) (citing 33 U.S.C. § 1311(a)). "Under §§ 301 and 502 of the Act, 33 U.S.C. §§ 1311 and 1362, any discharge of dredged or fill materials into 'navigable waters' – defined as the 'waters of the United States' – is forbidden unless authorized by a permit issued by the Corps of Engineers pursuant to § 404, 33 U.S.C. § 1344." United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 123 (1985). "The Act defines 'navigable waters' as 'waters of the United States, including the territorial seas.'" United States v. Deaton, 332 F.3d 698, 704 (4th Cir. 2003) (quoting 33 U.S.C. § 1362(7)). "The Corps's jurisdictional regulations define waters of the United States to include, among others, traditional navigable waters, that is, waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, tributaries of covered waters, including traditional navigable waters, and wetlands adjacent to covered waters, including tributaries." Id. (internal quotations and citations omitted).

The issuance of a Section 404 permit is governed by the regulations of the United States Environmental Protection Agency, see 40 C.F.R. part 230, and of the Corps, see 30 C.F.R. Part 320. Moreover, "no discharge or dredged for fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental

consequences." 40 C.F.R. § 230.10(a). With regard to projects that are also subject to NEPA, "the analysis of alternatives required for NEPA environmental documents, including supplemental Corps NEPA documents, will in most cases provide the information for the evaluation of alternatives under [Section 404] Guidelines." Id. at § 230.10(a)(4). Finally, "[t]he decision whether to issue a [Section 404] permit will be based on an evaluation of the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest . . . [t]he benefits which reasonably may be expected to accrue from the proposal must be balanced against its reasonably foreseeable detriments." 33 C.F.R. § 320.4(a)(1).

## IV. Discussion

A.   CWA Claim - Count I

Plaintiffs argue that the Corps violated the CWA because it failed to consider the alternative of improving the existing Route 9 in light of changed circumstances and the public interest evaluation was flawed. Plaintiffs' concede that this argument relates to the CWA claim contained in the Second Amended Complaint. (See Pls.' Mem. Supp. at 16 n. 3.) Plaintiffs justify this action by claiming that their arguments in the summary judgment memorandum "are fairly encompassed within the broad Clean Water Act Count of their First Amended Complaint." (Id.) In response, Defendants correctly argue that Plaintiffs' arguments are improper because the Court previously disallowed Plaintiffs to amend the CWA claim. Thus, the surviving CWA claim is contained in the First Amended Complaint, not the Second Amended Complaint. (See Order at 2, Docket number 73.) The First Amended Complaint makes no mention of the alternative of improving the existing Route 9 in light of changed circumstances or that the Corps' public interest evaluation was flawed.

This Court has ruled that the CWA claim from the First Amended Complaint is the one that

is viable. As such, Plaintiffs' summary judgment memorandum should have addressed the merits of that claim. It is not permissible for Plaintiffs to assert the same arguments in the motion for summary judgment that they were prohibited from asserting in the Second Amended Complaint. The Court does not share Plaintiffs' expansive view that the provision in the First Amended Complaint that the Corps violated the CWA based on "other errors that may become apparent upon certification of the record by Defendants" allows them to argue the very same claims that were rejected by this Court's previous Order. Had Plaintiffs asserted arguments that this Court had not previously explicitly barred, then it may have been permissible that those arguments could have fallen under the catchall provision of the First Amended Complaint. However, under the law of the case doctrine, Plaintiffs cannot now argue that they are permitted to make the exact same arguments that were previously rejected by the Court. See United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (stating that "the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988)). Plaintiffs' arguments, therefore, are barred by the Court's previous ruling and may not be brought in this motion.

In any event, the Court concludes that Plaintiffs' argument that the Corps should have considered upgrading the existing Route 9 because of changed circumstances since FHWA's issuance of the FEIS is unavailing for two reasons. First, this Court previously ruled that Plaintiffs are barred by issue preclusion from relitigating the issue of whether FHWA's FEIS's failed to consider a true upgrade of the existing Route 9. See Piedmont Environmental, 319 F. Supp. 2d at 681-82. Obviously, that ruling was in relation to the NEPA claim, and Plaintiffs make the instant argument in relation to the CWA claim. The Court previously ruled that Plaintiffs could not

relitigate the issue of the discussion of alternatives. Notwithstanding this difference, however, Plaintiffs' argument is that because of the changed circumstances, the Corps should have considered the alternative of upgrading the existing Route 9 before it issued the Section 404 permit. Unfortunately for Plaintiffs, the Court does not view its previous ruling as so limiting. That previous ruling necessarily barred Plaintiffs from making this argument at all, not just in the context of the NEPA claim. See Sedlack v. Braswell Servs. Group Inc., 134 F.3d 219, 224 (4th Cir. 1998) (stating that "collateral estoppel forecloses the relitigation of *issues of fact or law that are identical* to issue which have been actually determined and necessarily decided in prior litigation") (citation and quotations omitted). Therefore, Plaintiffs may not revisit the issue of whether the Corps should have considered the alternative of improving the existing Route 9 under their CWA claim.

Second, Plaintiffs may not make this argument when they never made it to the agency below. See Pleasant Valley Hosp., Inc. v. Shalala, 32 F.3d 67, 70 (4th Cir.1994). Granted, Plaintiffs did argue during the preparation of FHWA's EIS that upgrading the existing road should studied. However, nowhere in these comments do Plaintiffs argue that the upgrade alternative should be considered due to changed circumstances. Thus, this argument may not now be forwarded as part of this proceeding.

Finally, even if the Court ruled that Plaintiffs were not barred from arguing the merits of their summary judgment motion as to the CWA claim, the Court concludes that the Corps' public interest evaluation was not flawed. Under the applicable regulations the Corps must evaluate the proposed activities and its impact on the public interest. 33 C.F.R. § 320.4(a)(1). As part of this review, "[t]he benefits which reasonably may be expected to accrue from the proposal must be balanced against its reasonably foreseeable detriments." Id. After a review of the record, the Court concludes that

the Corps properly conducted the public interest review. Thus, the Section 404 permit was properly issued and the Corps' decision was not arbitrary, capricious, or contrary to law.

In light of the discussion and conclusions outlined above, the agencies' motion for summary judgment as it relates to Plaintiffs' CWA claim must be granted.

B.   NEPA Claim - Count II

Plaintiffs contend that the Corps violated NEPA in four respects: (1) the Corps improperly relied on FHWA's FEIS, (2) the Corps failed to consider changed circumstances which bear on the evaluation of alternatives to the proposed project, (3) the Corps only evaluated the issuance of the permit for the construction of the bridge and did not review the entire roadway project, and (4) the Corps did not provide public notice of the availability of its EA prior to issuing the FONSI.

1.   Improper Reliance on FHWA's FEIS

Plaintiffs contend that the Corps may not rely on the FHWA's FEIS in preparing its own EA without formal adoption of the FEIS. The agencies counter that the Corps' never fully adopted or incorporated FHWA's FEIS; rather, they Corps' merely supplemented FHWA's NEPA analysis with an EA to comply with the NEPA requirements. The Corps also notes that it was one of the cooperating agencies involved with the EIS conducted by FHWA and that supplementation is proper under this arrangement.

The Corps' reliance on FHWA's FEIS is not inappropriate in this case. Indeed, the case law on point makes it clear that agencies may rely, where possible, on previous agencies' efforts. See Sierra Club v. United States Army Corps of Eng'rs, 295 F.3d 1209, 1215 (11th Cir. 2002) (stating that "[a]gencies are not required to duplicate the work done by another federal agency which also

has jurisdiction over a project . . . NEPA regulations encourage agencies to coordinate on such efforts"); see also North Carolina v. Federal Aviation Administration, 957 F.2d 1125, 1136 (4th Cir. 1992). Thus, Plaintiffs' argument here is without merit.

Moreover, to support their position, Plaintiffs rely on Natural Res. Def. Council v. Duvall, 777 F.Supp. 1533 (E.D. Cal. 1991), and answer number 25 to the Council of Environmental Quality's Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations. Plaintiffs' reliance on these two authorities is misplaced. In Duvall, the Court granted the plaintiff's motion for summary judgment challenging the promulgation of rules pursuant to the Reclamation Reform Act. Duvall, 777 F.Supp. at 1534. The Court held that the NEPA challenge to the EA was meritorious and requested proposed remedies from the parties. Id. at 1542.

The issue presently before this Court is whether it is a violation of NEPA for a cooperating agency to incorporate by reference a FEIS in an EA/FONSI. This issue is obviously different than the issue presented in Duvall. Also, the answer to question number 25(b) of the CEQ Forty Questions states: "[c]are must be taken in all cases to ensure that material incorporated by reference . . . are in fact available for the . . . comment period." Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, Question and Answer 25(b), 46 Fed. Reg. 18026 (Mar. 23, 1981). It is notable that the answer to question 25(b) states that the material incorporated by reference must be available for comment. In this case the material incorporated by reference is FHWA's FEIS, not the EA/FONSI prepared by the Corps. There is no dispute that FHWA's FEIS was available for public comment. Plaintiffs' argument that the incorporation was barred by Duvall and answer number 25(b) to the CEQ's Forty Most Asked Questions is misplaced. Thus, Plaintiffs' argument that the Corps' improperly relied on FHWA's FEIS is without merit and must be rejected.

2.  Changed Circumstances - Evaluation of Alternatives

Plaintiffs submit that the Corps should have evaluated the upgrade of the existing Route 9 in light of changed circumstances between the issuance of the FHWA's FEIS in October 2000 and the Corps' FONSI in October 2002. As discussed above, the Court granted the agencies' motion in limine barring Plaintiffs from arguing that the Corps' did not consider alternatives to the project. Piedmont Environmental, 319 F. Supp. 2d at 681-82. Irrespective of any alleged changed circumstances, that decision is conclusive and binding on this case. Therefore, based on this ruling, Plaintiffs are not permitted to argue that due to changed circumstances the Corps should have evaluated alternatives to building a new four lane highway.

3.  Evaluation of the Entire Roadway Project

Plaintiffs contend that the Corps' should have evaluated the impacts of the entire project, including associated upland roadway construction. As an initial matter, the Court notes that the Corps was a cooperating agency with FHWA in its environmental review and FEIS. As such, the Corps was involved in the planning for the entire project including those activities that are not directly related to the Corps' specific jurisdiction, i.e., the construction of the bridge crossing the Shenandoah River, the relocation of the stream, and the filling of the two farm ponds.

Also, the Court notes that this Court's previous order granting FHWA's motion for summary judgment explicitly found that FHWA's NEPA review was not arbitrary and capricious or contrary to law. Route 9 Opposition Legal Fund, 213 F. Supp. 2d at 643-646. That decision reviewed in detail FHWA's NEPA review and why it met the legal standard for not being arbitrary and capricious or contrary to law. It is simply not logical for this Court to require the Corps to conduct its own separate independent NEPA review when FHWA has adequately conducted a NEPA review for the

entire project. Plaintiffs may not agree with FHWA's conclusions, but that decision does not require the Corps to duplicate FHWA's efforts, especially when the Corps was a cooperating agency with FHWA. As cited above, "[a]gencies are not required to duplicate the work done by another federal agency which also has jurisdiction over a project." Sierra Club, 295 F.3d at 1215.

The Corps' regulations do require, in some circumstances, that the scope of NEPA review should be expanded to areas outside the Corps' jurisdiction. 33 C.F.R. Pt. 325 App. B § 7(b)(1) ("In some situations, a permit applicant may propose to conduct a specific activity requiring a . . . permit . . . which is merely one component of a larger project . . . [t]he district engineer should establish the scope of the NEPA document (e.g., the EA or EIS) to address the impacts of the specific activity requiring a . . . permit and those portions of the entire project over which the district engineer has sufficient control and responsibility to warrant Federal review." "The district engineer is considered to have control and responsibility for portions of the project beyond the limits of Corps jurisdiction where the Federal involvement is sufficient to turn an essentially private action into a Federal action." Id. at § 7(b)(2). Obviously, these regulations do not apply here because FHWA's NEPA review covered the entire roadway project and there is not a non-federal portion of the project. Also, these regulations only apply when the non-federal portion of the project would somehow not be subject to NEPA review. North Carolina v. City of Virginia Beach, 951 F.2d 596, 604-05 (4th Cir. 1991). The entire project has been subject to NEPA review; thus, the regulations are inapplicable. Accordingly, the Corps was not required to evaluate the entire roadway project. Therefore, the Corps' NEPA review was not arbitrary, capricious, or contrary to law.

4. Public Notice

Plaintiffs argue that the Corps violated NEPA when it did not receive public comments on

the EA prior to issuing the FONSI. Plaintiffs assert that the CEQ's Forty Most Asked Questions Answers 37(b) and 38 require that before issuing a FONSI an agency must allow a period of public review. <u>Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations</u>, Questions and Answers 37(b), 38, 46 Fed. Reg. 18026 (1981). Unfortunately for Plaintiffs, the agencies are correct that the Corps is not required to give public notice of the EA before it issues the FONSI in final form. The Corps has not adopted the requirement set forth in CEQ's Forty Most Asked Questions that requires this public notice. 33 C.F.R. Pt. 230.1-230.26; 40 C.F.R. Pt. 230.1-230.7. Because it has adopted its own NEPA regulations the CEQ's Forty Most Asked questions are not binding on the Corps. See <u>Friends of the Earth v. Hintz</u>, 800 F.2d 822, 838 n.15 (9th Cir. 1986) (holding that "[a]ppellants' assertion that the 40 questions document is entitled to substantial deference in this circuit is incorrect . . . the CEQ's NEPA regulations are binding; the Forty Questions publication, however, is not a regulation"). Therefore, Plaintiffs' argument that the Corps was required under NEPA to provide public notice of the availability of its EA prior to issuing the FONSI is misplaced.

In conclusion, after a review of the record, the Court finds that the Corps' NEPA review did not improperly rely on FHWA's FEIS, was not required to evaluate alternatives based on changed circumstances, and was not required to evaluate the entire roadway project. Finally, the Court concludes that the Corps was not required to give public notice prior to issuing the EA/FONSI. Therefore, the Court concludes that the Corps' NEPA review was not arbitrary, capricious or contrary to law.

## V. Conclusion

In light of the foregoing discussion, the Court concludes that the Corps did not violate NEPA or the CWA. Consequently, Plaintiffs' motion for summary judgement is hereby **DENIED** and the agencies' motions for summary judgment are hereby **GRANTED** as set forth in the Court's Order entered on April 11, 1005.

It is so **ORDERED** filed.

The Clerk is directed to transmit true copies of this Memorandum Opinion to all counsel of record herein.

DATED this 5th day of May 2005.

W. CRAIG BROADWATER
UNITED STATES DISTRICT JUDGE